# Law Office of
# Justin A. Zeller, p.c.

Justin A. Zeller
jazeller@zellerlegal.com

John M. Gurrieri
jmgurrieri@zellerlegal.com

Telephone: 212.229.2249
Facsimile: 212.229.2246

March 30, 2021

**VIA ECF**

Hon. John P. Cronan, United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 20C
New York, NY 10007-131

Re: *Carrion et al v. R.G. New York Tile, Inc. et al*, 20 CV 5459 (JPC)

Dear Judge Cronan:

    The plaintiffs, with defendants' consent, hereby moves for the Court's approval of the attached settlement agreement as fair to the plaintiffs and dismissal of this action with prejudice.

    This case is against a former employer, R.G. New York Tile, Inc., Aaron Gavartin, Rafael Gavartin ("Defendants"). Plaintiffs have alleged their former employer failed to pay them proper overtime pursuant to the Fair Labor Standards Act and New York Minimum Wage Act in addition to failing to provide them with proper wage statements pursuant to the Wage Theft Prevention Act.

    The parties have executed a settlement agreement, which is attached. Plaintiffs have agreed to release the Defendants of the claims made in the complaint in exchange for $35,000.00. Of the $35,000, Jesus Carrion is to receive $15,266.46, Jose Carrion is to receive $7,799.94, and The Law Office of Justin A. Zeller, P.C., is to receive $11,933.60 in attorney's fees and costs.

    Pursuant to the Settlement Agreement, the payment checks have been sent to Plaintiffs' counsel to hold in escrow until Court approval and dismissal.

    Plaintiffs' counsel is holding the checks in escrow and has provided proof to defense counsel that the checks have been delivered to plaintiffs' counsel's office. The settlement agreement is enclosed.

    This action arises under the Fair Labor Standards Act, the Minimum Wage Act, and the Wage Theft Prevention Act. Plaintiffs allege that Defendants violated the wage and hour laws and that the Defendants owe Plaintiffs back wages and liquidated and statutory damages. In the complaint, Plaintiffs alleged that they worked at defendants' stone fabrication and installation busine]ss located in Manhattan. Plaintiffs alleged they were fabricators, installers, and repairers paid on an hourly basis, but not paid the overtime premium. Plaintiffs also alleged that Defendants failed to provide Plaintiffs with weekly pay stubs pursuant to the Wage Theft Prevention Act.

    This case settled at Court-ordered mediation which took place over two sessions. At the first mediation, Defendants produced time records for a certain period of time, that Plaintiffs verified were accurate. The parties adjourned to allow Defendants to dig deeper into their records,

so that Defendants could produce paychecks for the period of time where no time records existed. Defendants produced these records and Plaintiffs analyzed them. For settlement purposes, the Plaintiffs made certain factual assumptions to allow the parties to extrapolate how many approximate hours were worked each week by the Plaintiffs based on the paychecks. By the time the parties met at the second mediation, the parties had created a spreadsheet that, as accurately as possible based on the records and assumptions, contained information regarding how many hours were worked by the Plaintiffs in each workweek.

According to the calculations, Jesus. Carrion is owed $15,121.25 in unpaid overtime premium, the same in liquidated damages, and an additional $5,000.00 in statutory damages for violation of the Wage Theft Prevention Act's paystub requirement. According to the calculations, the plaintiff Jose Carrion is owed $7,725.75 in unpaid overtime premium, the same in liquidated damages, and an additional $5,000.00 in statutory damages for violation of the Wage Theft Prevention Act's paystub requirement.

Defendants take the position that liquidated damages are not justified in this action. In addition, the Defendants presented credible information that the Plaintiffs took 2 hours of break time each day, for which they were paid. The Plaintiffs took the position that they took only 1.25 hours of break time per day. If the Defendants could establish that Plaintiffs took 2 hours of break time, rather than 1.25, it would reduce the Plaintiffs' calculations of amounts owed, significantly.

In sum, a *bona fide* dispute exists with respect to wages owed, hours worked, whether Plaintiffs could prove entitlement to liquidated damages, and whether Plaintiffs were paid for all hours worked. Plaintiffs' counsel and Defendants' counsel discussed these issues at length in a series of telephone calls and email exchanges and at the Court-Ordered mediations, and agreed that in light of this *bona fide* dispute about the extent of damages, settlement would bring both sides certainty and a quick resolution, and so settlement would be in the best interests of both parties.

Employees cannot waive or settle claims under the Fair Labor Standards Act for unpaid minimum wages or overtime, except by settlements supervised by the Department of Labor or judicially-approved settlements of a civil action. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203-06 (2d Cir. 2015).

Plaintiffs and Defendants represent to the Court that the settlement agreement is fair to Plaintiffs, reasonably resolves *bona fide* disagreements between Plaintiffs and Defendants about the merits of Plaintiffs' claims; and demonstrates a good faith intention by Plaintiffs and Defendants that their claims for liability and damages in this action be fully and finally resolved and not re-litigated in the future.

In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at 203 n.3. Here, the parties believe that the settlement agreement is fair and reasonable because: (1) the Plaintiffs are collecting a substantial sum from a small employer; and (2) the settlement agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015).

The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.*

2

Plaintiffs' potential recovery is outlined above. Given the risks of this case, including the Defendants' testimony contradicting Plaintiffs' testimony regarding break times and entitlement to liquidated damages, Defendants' records, and the uncertainty of collecting a large judgment, the settlement amount of $35,000.00 is justified. Importantly, even under the Plaintiffs' calculations, which assume 1.25 hours of break time per day, the Plaintiffs are both collecting an amount in their pocket that exceeds the total amount of overtime wages they are claiming they are owed.

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'" *Id.* This agreement was reached before discovery was completed. Therefore, the settlement will cause the parties to avoid the expense and burdens of discovery and trial and the settlement will provide Plaintiffs with a prompt payment, as opposed to an uncertain outcome perhaps years in the future if the case is litigated further and potentially appealed. Settling the Plaintiffs' claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, the parties would have moved forward with discovery, motions, trial preparation, trial, and possibly appeals.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the inherent risks and expenses imposed by proceeding to a potential trial and post-judgment collection proceedings. Plaintiffs face the additional risk of recovery. Defendants operate a small business that has suffered greatly during the pandemic and lost a lot of business. Defendants are struggling to keep the doors open. Plaintiffs feel that collecting a judgment is by no means a certainty and strongly prefer the certainty provided by a settlement amount that Defendants can pay. Defendants also have credible records which they will substantiate with s testimony that show that Plaintiffs worked fewer hours than they are claiming. Thus, Plaintiffs faces serious litigation risks in pursuing the case further.

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" *Id.* This agreement was reached by arms-length negotiation by experienced employment attorneys, as both Plaintiffs' counsel and Defense counsel routinely handle employment cases, including those brought under the FLSA. The Plaintiffs are represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in representing employees in wage and hour litigation. Plaintiffs' counsel has represented plaintiffs in over 300 actions for such claims in the Southern District of New York alone, and many others in the Eastern District of New York and the District of New Jersey, and in the courts of the State of New York. Defendants' counsel in this case has successfully represented corporations and individual defendants in a multitude of wage and hours matters in federal and state court, including actions arising under the FLSA.

The fifth *Wolinsky* factor examines "possibility of fraud or collusion." *Id.* There is no evidence of any fraud or collusion in this case between the parties to circumvent the wage and hour laws. The agreement arose via settlement negotiations with opposing counsel. Indeed, this case was diligently litigated, and the settlement was reached through arms-length negotiation.

Lastly, the Court must consider evidence of any factors weighing against approval. There are none.

The settlement agreement also resolves the Plaintiffs' attorney's fees and costs. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Minimum Wage Act, N.Y. Lab. Law § 650, *et seq.*, Section 191 of the New York Labor Law, and the Wage Theft Prevention Act, 2010 N.Y. Laws 564. These laws, in combination, provide to a prevailing party in a civil action an award of attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012). This award is mandatory. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

Plaintiffs are represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in wage and hour litigation and incorporated in 2005. The sole shareholder of the law firm is Justin A. Zeller, an attorney who graduated law school in 2002 and has specialized in wage and hour law since 2005. Associated with the law firm is John M. Gurrieri who graduated law school in 2013, and was associated with the law firm from February 2014 until July 2017 and again since July 2019.

The amount of attorney's fees to which a party is entitled may be based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables, *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989); *see also Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23–24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS

77033, at *28–30 (S.D.N.Y. May 27, 2014), *adopted by* 2014 U.S. Dist. LEXIS 116671 (S.D.N.Y. Aug. 18, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Mr. Gurrieri's reasonable hourly rate has been considered and he was found to be entitled to a rate of $225 in 2020; $225 in 2018, $250 and $225 per hour in 2017; and $250 per hour in 2015. *See Villalva Estrada v. Giovanni's Italian Eatery, Inc.,* 2020 U.S. Dist. LEXIS 151715, *11, 16 CV 6162, (S.D.N.Y. Aug. 20, 2020); *Alvarez v. Nu Bella Nail & Spa I, Inc.*, No. 16 CV 5721, slip op. (E.D.N.Y. June 14, 2018), *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16 CV 1907, 2017 U.S. Dist. LEXIS 185397, at *14 (E.D.N.Y. Nov. 7, 2017), *adopted by* 2017 U.S. Dist. LEXIS 205344 (E.D.N.Y. Dec. 12, 2017); *Duran v. Superior Cooling LLC*, No. 15 CV 7243, 2017 U.S. Dist. LEXIS 82249, at *20 (E.D.N.Y. May 10, 2017); *Patterson v. Copia NYC LLC*, No. 15 CV 2327, 2015 U.S. Dist. LEXIS 189029, at *18 (S.D.N.Y. Dec. 29, 2015).

The Plaintiffs would have requested that the Court find a reasonable hourly rate of $350 for Mr. Gurrieri. This rate is within the range previously found reasonable for this nature of action in this forum and account for increased experience by each of these litigators since the Courts mentioned above considered their hourly rates.

To determine the reasonableness of the hours, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the hours and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

Plaintiffs include herewith on behalf of the Law Office of Justin A. Zeller, P.C., the contemporaneous time records of the Plaintiffs' counsel, which shows 18.7 total hours spent in this case. The included description with each entry corresponds to the descriptions in the American Bar Association's Uniform Task-Based Management System, a broadly recognized system of documenting hours. Courts even recommend its use for motions for attorney's fees. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1174 (N.D. Cal. 2004); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N.D. Cal. 2004) ("Although the court considers plaintiff's data in the manner presented, the American Bar Association's "Litigation Code Set" provides a more uniform methodology for categorizing requested hours. *See* American Bar Association ("ABA"), Uniform Task-Based Management System Information, *available at* [http://www.americanbar.org/groups/litigation/resources/uniform_task_based_management_system.html]. The ABA template commends itself to parties applying for fee awards."). Similar productions by the plaintiff's counsel of such contemporaneous time records have been found by the Court to be "complete." *Palacios v. Z & G Distribs., Inc.*, No. 11 CV 2538, 2013 U.S. Dist. LEXIS 112676, at **18–19 (S.D.N.Y. Aug. 6, 2013).

The 18.7 total hours sought are reasonable, appropriately delegated among the involved attorneys requisite to their experience, and necessary to the litigation of this action. Thus, Plaintiffs' attorneys' fees are $6,545.00.

Additionally, the Plaintiffs' costs total the $400.40 filing fee and forty cents searching case records. This expense was prepaid by the Plaintiffs' counsel. The Plaintiffs include an enumeration of these costs herewith.

Therefore, the total fees and costs sum to a total lodestar of $6,945.40.

Although the lodestar ($6,945.40) is less than the total attorney's fees and costs awarded under the settlement agreement, the proposed allocation of $11,933.60 is reasonable. The total amount apportioned as attorney's fees is fair and reasonable because it is one-third of the total settlement plus costs. Courts in this Circuit regularly approve fees of one-third plus costs. *See, e.g.*, *Rojas et al. v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *4 (S.D.N.Y. Oct. 10, 2018) (finding attorneys' fees representing one-third of the settlement amount plus costs reasonable); *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. November 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Gutierrez v. Highridge Bagels, Inc.*, No. 17 Civ. 1451 (VLB), 2017 U.S. Dist. LEXIS 90984, at *2 (S.D.N.Y. June 12, 2017) ("[T]he Court finds the attorneys' fees, which are one-third of the recovered amount plus costs, to be fair and reasonable[.]"); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 1951865, at *2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees ... are commonly accepted in the Second Circuit in FLSA cases.").

In addition, the proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014). Nothing additional is to be paid by the plaintiff to the plaintiff's counsel. The proposed allocation was negotiated and agreed to between the plaintiff and the plaintiff's counsel.

Further, the lodestar multiplier in this case (1.72) is fair and well within the range found to be fair in this Circuit. *See Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *24 (E.D.N.Y. 2018) (citing *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090, 2012 U.S. Dist. LEXIS 164265, 2012 WL 5830557, at *3 (E.D.N.Y. Nov. 16, 2012) ("Courts regularly award multipliers from two to six times the lodestar."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CV 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (finding that "fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").

For the foregoing reasons, the parties request the Court find the settlement agreement to fairly compromise Plaintiffs' claims under the Fair Labor Standards Act and approve the settlement agreement as fair and reasonable and dismiss this action with prejudice against Defendants.

Respectfully submitted,

*John M. Gurrieri*

John M. Gurrieri

Enclosures (3)

6

# SETTLEMENT AGREEMENT AND LIMITED RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by and between Plaintiffs JESUS S. CARRION and JOSE R. CARRION, ("Plaintiffs") on the one hand, and AARON GAVARTIN, RAFAEL GAVARTIN, and R.G. NEW YORK TILE, INC., (the "Individual Defendants"), on the other hand, (collectively referred to as the "Litigation Defendants"), jointly and severally, their parents, subsidiaries, divisions, affiliates, successors, and related companies, and the officers, directors, shareholders, agents, trustees, employees, attorneys, and representatives of all of them (hereinafter referred to collectively as "Defendants" or "Company" or "Corporation").

WHEREAS, Plaintiffs allege that they worked for Defendants as employees; and

WHEREAS, a dispute has arisen regarding Plaintiffs' alleged employment and the terms thereof, which dispute has resulted in the filing of an action in the United States District Court for the Southern District of New York, Civil Action No. 20 CV 5459 (ALC) (hereinafter "the Litigation"), alleging, among other things, a violation of federal and state wage and hour and overtime laws; and

WHEREAS, Defendants deny all claims and allegations asserted by Plaintiffs and deny any violation of federal and state wage and hour and overtime laws; and

WHEREAS, the parties desire to resolve all disputes between them without the necessity of further litigation;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed as follows:

1.  **Payment**: Within seven days of full execution of this Agreement, Defendants shall pay and deliver to Plaintiffs' counsel, to be held in escrow, the Settlement Payment in the gross sum of Thirty-Five Thousand Dollars ($35,000.00) (the "Settlement Amount") inclusive of attorney's fees and will be paid as follows:

    (a) Mr. Jesus Carrion will receive the gross amount of $15,266.94 by check made out to The Law Office of Justin A. Zeller, P.C., Escrow Account, F/B/O Jesus Carrion;
    (b) Mr. Jose Carrion will receive the gross amount of $7,799.94 by check made out to The Law Office of Justin A. Zeller, P.C., Escrow Account, F/B/O Jose Carrion; and
    (c) The Law Office of Justin A. Zeller, P.C. will receive the amount of $11,933.12, representing attorneys' fees and costs by check made out to The Law Office of Justin A. Zeller, P.C., Escrow Account.

Except as set forth above, each side shall, bear its own fees and costs.

Within seven (7) days of receipt of these payments by Plaintiffs' counsel, the parties will jointly

1

move for dismissal of this action with prejudice and approval of the settlement as fair and reasonable by Court Order. Upon issuance of a Court Order dismissing this action with prejudice and approving the settlement as fair and reasonable, the Settlement Amount may be disbursed by Plaintiffs' counsel from its escrow account. In the event the Court refuses to approve this settlement as fair and reasonable or fails to dismiss this action, and the case must continue, the Plaintiffs and Plaintiffs' counsel will return all settlement funds received under this Section.

In the event of an audit of Defendants by any taxing authority regarding payments to Plaintiffs, Plaintiffs shall indemnify and hold Defendants harmless for any failure of Plaintiffs to pay taxes on payments designated as damages received from Defendants pursuant to this Agreement.

2. <u>Release and Covenant Not To Sue</u>: Plaintiffs, on behalf of themselves, and their spouses, heirs, executors, testators, representatives, agents, successors and assigns, freely and irrevocably relinquish, release, and waive all possible charges, complaints, causes of action, liabilities, obligations, demands, contract rights, and claims against each of the Defendants and their (as applicable) respective, parent companies, subsidiaries, divisions, related or affiliated companies, spouses, heirs, executors, testators, representatives, predecessors, successors or assigns, or their current or former trustees, representatives, employees, agents, attorneys, shareholders, officers, directors, and sole proprietors (the "Releasees"), based on or arising out of any acts, omissions, conduct, thing or matter from the beginning of time up to and including the date the District Court dismisses the Action with prejudice, (a) relating to or arising out of wages, hours, overtime, prevailing wages, or wage deductions, (b) arising under or for alleged violation of the Fair Labor Standards Act (the "FLSA") and/or the New York Labor Law ("NYLL"), (c) arising under any actual or alleged express or implied contract, or under any common law or for any tort, in regard to work hours overtime, and/or payment of wages. This release and waiver includes any claim for attorneys' fees, expenses and costs in connection with any of the claims released hereby. This waiver and release includes all claims described above either presently known or unknown by Plaintiffs. (The above shall be collectively referred to as "Released Claims").

3. <u>No Admission of Wrongdoing</u>: This Agreement and compliance with this Agreement shall not be construed as an admission by Defendants of any liability whatsoever, or of any violation of any statute, regulation, duty, contract, right or order.

4. <u>Return of all Property</u>: Plaintiffs represent that they have returned to Defendants all Company property and any "Company Information" including, without limitation, mailing lists, reports, client lists, employee lists, files, memoranda, records and software, computer, door and file keys, security access codes, computer access codes or disks and other physical or personal property which Plaintiffs received, prepared or helped prepare, or otherwise came in contact with and that Plaintiffs will not retain any copies, duplicates, reproductions or excerpts thereof and will not use or divulge such Confidential Information except if required by law. The term "Company Information" as used in this Agreement includes but is not limited to: (a) confidential information of the Company including, without limitation, information received from third parties under confidential conditions; and (b) other financial information or trade secrets, and processes of the

Company, the use or disclosure of which might reasonably be construed to be contrary to the interests of the Company or its affiliates and other related companies.

5. <u>Employment References</u>: Any request for a reference with respect to Plaintiffs will be referred to the Company. The Company will limit any response to confirming Plaintiffs' titles and dates of employment, and shall further state that in accordance with the Company's policy, no further information can be provided beyond this neutral reference.

6. <u>Modification of the Agreement</u>: This Agreement may not be changed unless the changes are in writing and signed by a proper representative of Plaintiffs and Defendants.

7. <u>Acknowledgment:</u> Plaintiffs and Defendants acknowledge that they have been fully and fairly represented by counsel in this matter.

8. <u>Notices</u>: Notices required under this Agreement shall be in writing and shall be deemed given on the first business day following first-class mailing and facsimile transmission thereof. Notice hereunder shall be delivered to:

| To Plaintiffs: | To Defendants: |
|---|---|
| Justin A. Zeller, Esq. | Ronald B. Weisenberg, Esq. |
| Law Office of Justin A. Zeller, P.C. | Law Office of Ronald B. Weisenberg, P.C. |
| 277 Broadway, Suite 408 | 167 East 67th Street, Suite Street, Suite 9A |
| New York, NY 10007 | New York, NY 10065 |
| jazeller@zellerlegal.com | rweisenbergesq.com@gmail.com |

9. <u>Governing Law</u>: This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York, excluding the conflict-of-laws principles thereof. The parties' consent and stipulate to the exclusive personal jurisdiction of the United States District Court for the Southern District of New York, in any subsequent proceeding to enforce this Agreement.

10. <u>Enforceability:</u> If any provision of this Agreement is held to be illegal, void, or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement, provided, however, that upon any finding by a court of competent jurisdiction or an arbitrator that a release or waiver of claims or rights or a covenant set forth herein is illegal, void or unenforceable, Plaintiffs agree to promptly execute a release, waiver and/or covenant that is legal and enforceable. A failure by Plaintiffs to execute a valid and enforceable release within twenty-one (21) days of Defendants request shall result in Plaintiffs' full return to Defendants of the full Settlement Amount paid under this Agreement.

11. <u>Release Notification and Withdrawal</u>:

    a. Defendants advise Plaintiffs to discuss the terms of this Agreement and release of claims with their legal counsel. Plaintiffs acknowledge that it is their choice to waive

a. Defendants advise Plaintiffs to discuss the terms of this Agreement and release of claims with their legal counsel. Plaintiffs acknowledge that it is their choice to waive any potential claims in return for the benefits set forth herein and that they make this decision after careful thought, and after an opportunity to consult with their attorneys.

b. Plaintiffs acknowledge that they have been given an opportunity to consider this Agreement for at least twenty-one (21) days, and that they fully understand and agree to all of its terms.

12. Counterparts: To signify their agreement to the terms of this Agreement and Release, the parties have executed this Agreement on the date set forth opposite their signatures, which appear below. This Agreement may be executed in two or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart.

THERFORE, the parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

Dated: _____     _____
                           JESUS S. CARRION

Dated: _____     _____
                           JOSE R. CARRION

Dated: 3/19/21             _____
                           RAFAEL GAVARTIN
                           *Individually and on behalf of R.G. NEW YORK TILE, INC.*

Dated: 03/19/21            _____
                           AARON GAVARTIN

4

any potential claims in return for the benefits set forth herein and that they make this decision after careful thought, and after an opportunity to consult with their attorneys.

      b.    Plaintiffs acknowledge that they have been given an opportunity to consider this Agreement for at least twenty-one (21) days, and that they fully understand and agree to all of its terms.

    12.    Counterparts: To signify their agreement to the terms of this Agreement and Release, the parties have executed this Agreement on the date set forth opposite their signatures, which appear below. This Agreement may be executed in two or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart.

**THERFORE**, the parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

Dated: _____

                                                _____
                                                JESUS S. CARRION

Dated: **Mar 17, 2021**

                                                JOSE R. CARRION

Dated: _____

                                                RAFAEL GAVARTIN
                                                *Individually and on behalf of R.G. NEW YORK TILE, INC.*

Dated: _____

                                                AARON GAVARTIN

any potential claims in return for the benefits set forth herein and that they make this decision after careful thought, and after an opportunity to consult with their attorneys.

      b.    Plaintiffs acknowledge that they have been given an opportunity to consider this Agreement for at least twenty-one (21) days, and that they fully understand and agree to all of its terms.

    12.    <u>Counterparts</u>: To signify their agreement to the terms of this Agreement and Release, the parties have executed this Agreement on the date set forth opposite their signatures, which appear below. This Agreement may be executed in two or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart.

    **THERFORE**, the parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

Dated: Mar 16, 2021

*Jesus Carrion (Mar 16, 2021 22:52 EDT)*
JESUS S. CARRION

Dated: _____

JOSE R. CARRION

Dated: _____

RAFAEL GAVARTIN
*Individually and on behalf of R.G. NEW YORK TILE, INC.*

Dated: _____

AARON GAVARTIN

4

# Time Sheet

03/30/2021

Carrion v. R.G. New York Tile, Inc.
Date Range: All
Status: Pending/Released/Transfered/Exception

| Date | Hrs | Timekeep |
|---|---|---|
| 06/19/2020 | 1.40 | JMG |
| | | Pleadings, Fact Investigation/Development, Draft/revise |
| 07/03/2020 | .60 | JMG |
| | | Pleadings, Draft/revise |
| 07/15/2020 | .60 | JMG |
| | | Pleadings, Draft/revise |
| 07/28/2020 | .30 | JMG |
| | | Pleadings, Manage data/files |
| 09/23/2020 | 1.00 | JMG |
| | | Fact Investigation/Development, Pleadings, Draft/revise, Review/analyze, Communicate (other outside counsel) |
| 11/02/2020 | .50 | JMG |
| | | Settlement/Non-Binding ADR, Communicate (other outside counsel), Court Mandated Conferences, Appear for/atten |
| 12/15/2020 | 1.60 | JMG |
| | | Fact Investigation/Development, Review/analyze, Draft/revise, Communicate (with client), Court Mandated Conferences, Plan and prepare for |
| 12/16/2020 | 2.00 | JMG |
| | | Settlement/Non-Binding ADR, Court Mandated Conferences, Plan and prepare for, Appear for/atten |
| 01/22/2021 | 1.20 | JMG |
| | | Settlement/Non-Binding ADR, Review/analyze, Draft/revise |
| 01/29/2021 | 3.00 | JMG |
| | | Fact Investigation/Development, Court Mandated Conferences, Settlement/Non-Binding ADR, Plan and prepare for, Draft/revise, Research, Appear for/atten, Communicate (in firm), Communicate (with client), Communicate (other outside counsel) |
| 02/08/2021 | 2.20 | JMG |
| | | Settlement/Non-Binding ADR, Dispositive Motions, Draft/revise, Review/analyze |
| 03/02/2021 | .60 | JMG |
| | | Settlement/Non-Binding ADR, Review/analyze, Communicate (other outside counsel), Other Written Motions and Submissions, Draft/revise |
| 03/07/2021 | .60 | JMG |
| | | Settlement/Non-Binding ADR, Draft/revise, Communicate (in firm), Communicate (with client), Communicate (other outside counsel) |
| 03/15/2021 | .20 | JMG |
| | | Settlement/Non-Binding ADR, Draft/revise, Communicate (other outside counsel) |
| 03/16/2021 | .40 | JMG |
| | | Other Written Motions and Submissions, Draft/revise, Settlement/Non-Binding ADR, Review/analyze, Communicate (in firm), Communicate (with client), Communicate (other outside counsel) |
| 03/23/2021 | .50 | JMG |
| | | Settlement/Non-Binding ADR, Draft/revise, Communicate (in firm), Communicate (other outside counsel), Communicate (with client), Dispositive Motions, Draft/revise, Manage data/files |
| 03/29/2021 | .30 | JMG |
| | | Settlement/Non-Binding ADR, Review/analyze, Communicate (other outside counsel), Communicate (in firm), Manage data/files |

# Time Sheet

03/30/2021

Carrion v. R.G. New York Tile, Inc.
Date Range: All
Status: Pending/Released/Transfered/Exception

| Date | Hrs | Timekeep |
|---|---|---|
| 03/30/2021 | .40 | JMG |
| | | Settlement/Non-Binding ADR, Manage data/files, Dispositive Motions, Draft/revise, Communicate (in firm) |
| 03/30/2021 | .30 | JMG |
| | | Dispositive Motions, Review/analyze, Communicate (in firm), Manage data/files |
| 03/30/2021 | 1.00 | JMG |
| | | Dispositive Motions, Draft/revise |
| 02/16/2023 | .50 | JMG |
| | | Settlement/Non-Binding ADR, Draft/revise, Communicate (other outside counsel) |
| Total hours: | 19.20 | |

# Case Costs

1308 - Carrion v. R.G. New York Tile, Inc.

Date Range: All

03/30/2021

| Date | User | Type | Quantity | Amount |
|---|---|---|---|---|
| 7/15/2020 | JMGURRIERI | Court fee | | 400.00 |
| 1/29/2021 | JMGURRIERI | Case records | | .40 |
| | | | Total: | 400.40 |

The Court is in receipt of the parties' settlement agreement. The Court has reviewed the proposal in light of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair.

The Court notes that the attorney's fees represent one third of the total settlement amount. While the Court finds those fees to be reasonable, the Court does not make any finding as to the reasonableness of counsel's hourly rate or as to the reasonableness of any particular hours billed for work on this case.

Accordingly, the settlement is approved, and the case is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Date: March 31, 2021

    New York, New York

_____
JOHN P. CRONAN
United States District Judge

Page 1